## STANDARD PLUMBING, HEATING & SUPPLY CO., Inc., v. DUPREE et al.
### No. 1400.

Court of Appeal of Louisiana.
First Circuit.

Dec. 4, 1934.

Ashton L. Stewart, of Baton Rouge, for appellant.

Jos. A. Loret, of Baton Rouge, for appellees.

MOUTON, Judge.

Plaintiff obtained judgment for $247, with legal interest, against Thomas B. Dupree, one of the defendants herein, on the 26th day of July, 1933, which was signed by W. Karruth Jones, judge for the parish of East Baton Rouge, on July 27, 1933.

Thomas B. Dupree entered a confession of judgment, in favor of his mother, Mrs. Annie Hayes Parker, for the sum of $22,500 with interest on $20,000 at 8 per cent. per annum from March 5, 1928; and with a like interest on $2,500 of said $22,500, from March 19, 1930.

On the 31st day of July, 1933, two days after this confession of judgment had been entered by Thomas B. Dupree in favor of Mrs. Annie Hayes Parker, judgment was signed in her favor by Judge Favrot, judge for said parish, in the amount for which the confession of judgment had been made.

On the 31st of July, 1933, the day on which that judgment was signed, in execution thereof, Mrs. Parker obtained the issuance of a writ of fi. fa. under which the property belonging to Thomas B. Dupree, consisting of rights, credits, and movable effects, was seized.

On the 3d of August, 1933, a couple of days after Mrs. Parker had seized these effects, plaintiff herein, the Standard Plumbing & Supply Company, obtained the issuance of a fi. fa., under which the same property was seized.

Plaintiff, Supply Company, filed the present suit, alleging that Thomas B. Dupree was insolvent on July 29th and 31st when the confession of judgment was made and rendered, as before stated; and that Mrs. Parker knew he was then insolvent; and had no other property out of which plaintiff could satisfy its judgment against Thomas B. Dupree.

On these allegations plaintiff herein prayed that the seizure made by Mrs. Parker be set aside and that the property seized be subjected to its judgment.

The district judge rejected plaintiff's demand, from which plaintiff appeals.

The record shows that Thomas B. Dupree was heavily involved in 1933, at the time he confessed judgment in favor of his mother and when that judgment was signed. It is shown that a year or two before, his mother gave him some money, he says, probably, and advanced him a few loans.

His aunt, Mrs. Cook, also made him loans of money about that time, she thinks about $1,000, and could not say whether she made him other loans. According to the value Thomas B. Dupree placed on his property, it is not clear that he was solvent in July, 1933. He admitted he was probably insolvent when this case was tried, which was in April and May, 1934, about nine months after he confessed judgment in favor of his mother, who we cannot believe would have seized two of his automobiles, a motorcycle, and even the furniture in his home, unless he had been absolutely insolvent.

The evidence shows that the only property that could be sold under execution to satisfy his mother's judgment was seized by the sheriff and that he had no other unincumbered effects out of which the judgment of the plaintiff for $247, with legal interest, could have been satisfied.

The real issue in contest is as to whether or not his mother, Mrs. Parker, knew that he was insolvent in July, 1933, when he confessed judgment in her favor and which was signed three days thereafter.

Counsel for Mrs. Parker, defendant, contends that the only cause that could be advanced to set aside the seizure would be that Thomas B. Dupree had confessed judgment, and that it had been made in favor of his mother, Mrs. Parker.

The proof shows that the sum for which Mrs. Parker sued was for a legitimate sum of money Mrs. Parker loaned to her son, and that it was due when he confessed judgment.

A confession of judgment, as this was, for an honest debt, is no ground for the revocation of a seizure in a case of this character, nor is it revocable because of the relationship of mother and son, as exists in this case. It was so held in Maurin v. Rouquer et. al., 19 La. 594, body of decision, page 600; also, previously in St. Avid v. Weimprender's Syndics, 9 Mart. (O. S.) 648, 654; Ham v. Herriman, 1 Mart. (N. S.) 535.

When the complaint rests solely on the two grounds, above stated, plaintiff has no right to the revocatory action and this seems to be the settled rule in our jurisprudence.

The court, however, in the case of Ellis, Milbank & Company, Transferees, v. Fisher, Burgess & Co., on rehearing, 10 La. Ann. page 482, expresses itself, as follows, on this subject:

"The mere fact that Ellis confessed judgment in favor of Milbank & Co., is not conclusive, though it might be considered, with other circumstances, as an indication of fraud."

In the case of Maurin v. Rouquer et al., 19 La. 594, above cited, it will also be observed that in ruling that the mere relationship of father and son was not to be taken as evidence of fraud, the court took occasion to say that the "son was not a creditor of the father," whereas here the mother was unquestionably a creditor of Thomas B. Dupree, her son, who confessed judgment in her favor.

Thomas B. Dupree, when testifying, was asked if he had not compiled the list of the property seized and had not given it to his mother's attorney. He first answered he did not think so, then said, "I don't know that I know," and finally stated in answer to that question that he was not positive he had not given this list to his mother's attorney.

He was also asked if he had not accompanied his mother's attorney in securing the writ of fieri facias which was issued on her judgment against him. His answer to that question is: "I don't remember."

He testified also that he is certain he had a conversation with Mr. Loret, attorney for Mrs. Parker, with reference to the claim of his mother, prior to the seizure, and that if he saw him at all it was "at her instigation."

It is shown that Thomas B. Dupree inherited property from his father who died many years ago; that it grew in value, listed for a time to about $150,000; that his mother managed his affairs from his birth, and knew everything about his estate when he became

of age. It is shown that he is the only child; that he lives in the city of Baton Rouge where his mother lives; that she is very much attached to him; and that he is a frequent visitor at her home. Mrs. Parker says, however, that she was not aware of the condition of his business affairs in July, 1933, when she obtained her judgment against him. She claims she knew a suit had been filed by plaintiff, Supply Company, against her son, but is positive she did not know that a judgment had been rendered against him on that claim.

This judgment in favor of plaintiff, herein, was rendered on July 26, 1933, and was signed July 27, 1933, and the confession of judgment by Thomas Dupree was signed July 31, 1933, two days thereafter.

Not only this, but the record shows that on July 31, 1933, the day this judgment was signed, Mrs. Parker caused the fi. fa. to issue under which the effects belonging to her son were seized. It is so alleged in plaintiff's petition and admitted by Mrs. Parker, respondent.

It is difficult to account for this hurried execution of this judgment so confessed, without presuming that Mrs. Parker had knowledge that a judgment had been obtained by plaintiff against her son.

There was certainly a purpose in this hurried seizure, and the character of the effects seized indicate also the object Mrs. Parker had in view.

As hereinabove stated, she seized his automobiles and the household furniture in her son's home. Asked if she intended to give these cars back to her son after she had "bought them in," she answered: "I intended to go on using the cars. I was using them. When he used them he took me." Asked if she also intended to use the household furniture she had seized, she answered, "When I stayed at his home," where she testifies she stayed more than three weeks on one occasion and had stayed last summer when her son and his wife were out of town.

If Mrs. Parker had ever really intended to own this property as a result of her seizure, she never would have testified in reference thereto, as appears in her testimony. The only reasonable conclusion is that she never intended to dispossess her son of these effects and the other property seized under her fi. fa.

Civ. Code, art. 1969, says, in part:

"Every act done by a debtor with the intent of depriving his creditor of the eventual right he has upon the property of such debtor, is illegal, and ought, as respects such creditor, to be avoided."

The debtor here, Thomas B. Dupree, as appears from the evidence to which we have referred and the circumstances of this case, by his confession of judgment intended to deprive his creditor, plaintiff company, from the eventual rights it had upon his property, which would result from the privilege to be acquired by his mother from her first seizure of his property.

Civ. Code, art. 1984, reads, as follows:

"Every contract shall be deemed to have been made in fraud of creditors, when the obligee knew that the obligor was in insolvent circumstances, and when such contract gives to the obligee, if he be a creditor, any advantage over other creditors."

The purpose Mrs. Parker had in mind when she obtained the confession of judgment and the immediate seizure of the property was to get a preference or privilege as a result of her seizure and to thus deprive plaintiff from its eventual rights in the property seized; and which was the only effects from which plaintiff could have satisfied its judgment.

The testimony to which we have referred and the character of the property seized lead us to that conclusion.

■ Positive evidence is not indispensable in cases of this nature to authorize the annulment of fraudulent transactions between a debtor and his preferred creditor. J. Grossman's Sons et al. v. Chachere et al., 136 La. 666, 67 So. 545.

In that case, it was held "that proof by circumstances, tending to produce a strong impression that the creditor was aware of the insolvency," will suffice. This decision is in line with many prior adjudications on this subject; and it may be appropriately remarked that if the complaining creditor had to rely only on positive testimonial proof or on admissions to show that the favored creditor knew that his debtor was insolvent, seldom indeed would he be able to set aside these fraudulent transactions, where the debtor is seeking to confer an illegal advantage on one of his creditors over his other creditors.

In this case, we find, from a proper analysis of the evidence and the circumstances to which we referred, that the defendant, Thomas B. Dupree, was insolvent when he confessed the judgment which was signed July 31, 1933; and that Mrs. Parker, his mother, was then aware of his insolvency.

Plaintiff company is entitled to the relief sought.

It is therefore ordered, adjudged, and decreed that the seizure of Thomas B. Dupree's property under the judgment rendered against him in favor of Mrs. Annie Hayes Parker be and is hereby set aside; that this property be released from said seizure and be subjected to the judgment for $247, with legal interest, obtained by plaintiff, herein, against Thomas B. Dupree; and that Mrs. Parker pay all costs of this suit.